EXHIBIT 1:  Order by Judge Sorokin of the United States District Court fort he District of Massachusetts

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOSEPH MANTHA, *on behalf of himself and others similarly situated*, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 19-12235-LTS |
| QUOTEWIZARD.COM, LLC, | ) ) ) | |
| Defendant. | ) ) ) | |

ORDER ON DEFENDANT'S MOTION FOR RECONSIDERATION (DOC. NO. 149)

March 16, 2021

SOROKIN, J.

This is a putative consumer class action brought against Defendant QuoteWizard.com, LLC under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. On February 24, 2021, the undersigned overruled QuoteWizard's Objection (Doc. No. 133) to a discovery order (Doc. No. 132) issued by Chief Magistrate Judge Kelley. QuoteWizard has now moved for reconsideration of that ruling. Doc. No. 149. For the reasons that follow, QuoteWizard's Motion for Reconsideration (Doc. No. 149) is DENIED.

I.  BACKGROUND

Plaintiff Joseph Mantha seeks roughly 46,000 Do Not Call requests made by consumers in response to text messages sent to them on QuoteWizard's behalf by Drips Holdings, LLC, a third party. Mantha served his Second Request for Production of Documents (RPD) on QuoteWizard in mid-2020. Two of these requests are relevant here.

First, Request 17 ("RPD #17") sought to require that QuoteWizard:

1

> Produce all documents evidencing any complaints received by you from anyone, including any government agency, in regards to text messages sent by You or some entity on Your behalf utilizing Drips technology.

Doc. No. 104-1 at 7.

QuoteWizard refused this request, asserting the documents sought were not relevant, production would be burdensome, the information sought was confidential, and that such production would be beyond the scope of Phase 1 discovery. Id. QuoteWizard did not contend that the documents sought were not in its possession custody or control. Id.

Second, Request 25 ("RPD #25") sought to require that QuoteWizard:

> Produce all consumer requests that future telemarketing calls cease ("Do Not Call") provided to you by anyone in any way relating to text telemarketing conducted on your behalf by Drips.

Id. at 9.

QuoteWizard also refused this request, asserting the documents sought were not relevant, production would be burdensome, the information sought was confidential, and that such production would be beyond the scope of Phase 1 discovery. Id. Again, QuoteWizard did not contend that the documents sought were not in its possession custody or control.

Mantha moved to compel production of RPD #17 and RPD #25 on September 30, 2020. Doc. No. 104. In the joint status report submitted to the Court (per the Court's direction and in lieu of a motion to compel) the parties essentially reiterated their earlier positions: Mantha sought the complaints and QuoteWizard pressed relevance and burden objections. As before, QuoteWizard did not contend the documents sought were not in its possession, custody, or control. See Doc. No. 104 at 13–14 (QuoteWizard's argument as to RPD #17); Id. at 18 (QuoteWizard's argument as to RPD #25, expressly incorporating QuoteWizard's argument as to RPD #16); See also id. at 11–13 (QuoteWizard's arguments as to RPD #16).

2

Judge Kelley resolved the dispute. On October 19, 2020, she ordered: "Concerning RPD #17, defendant shall produce all documents evidencing any complaints received by . . . QuoteWizard from anyone, including any governmental agency, regarding text messages sent by QuoteWizard or on QuoteWizard's behalf using Drips technology." Doc. No. 112. She continued: "Concerning RPD #25, defendant shall produce all 'Do Not Call' requests relating to telemarketing conducted on behalf of QuoteWizard by Drips." Id. As to the somewhat related RPD #16, Judge Kelley ordered that QuoteWizard "shall produce any emails between QuoteWizard and [a third party] relating to any consumer telemarketing complaints that could possibly be related to the consumers' consent. It is not necessary that the complaints explicitly reference consent." Id.

Nothing in Judge Kelley's October 2020 Order limited the required discovery to a list of phone numbers or a list of complaints; she ordered production of "all documents evidencing any complaints," id. (emphasis added), and the production of "all 'Do Not Call' requests," id. (emphasis added), in QuoteWizard's possession, custody, or control. Apparently, no party considered Judge Kelley's Order ambiguous or clearly erroneous as neither party sought clarification or reconsideration from Judge Kelley and neither party objected to the undersigned.

QuoteWizard supplemented its responses to Mantha's Second RPD. Doc. No. 124-1. In response to RPD #17, QuoteWizard represented it had no documents "evidence[ing] any complaints [received by QuoteWizard] from anyone." Id. at 4. In response to RPD #25, QuoteWizard produced a spreadsheet evincing more than 46,000 Do Not Call requests received by Drips. Id. at 6. The spreadsheet does not contain the Do Not Call requests themselves as the text of Judge Kelley's Order required, rather it contains five columns with information such as the phone number of the person making the request (which QuoteWizard redacted) and the date

3

of the Do Not Call request. Doc. No. 124 at 4. Following some back and forth, QuoteWizard's counsel disclosed to counsel for Mantha over email that further documents potentially responsive to RPDs #17 and #25 might exist, such as text messages from consumers requesting no further contact. Doc. No. 126-1. QuoteWizard took the position, however, that any such documents were held by Drips and thus were not in QuoteWizard's possession, custody, or control.

Mantha requested that Judge Kelley compel production of the substance of the Do Not Call requests (including, among other things, the requests themselves) by letter dated December 20, 2020, arguing these documents were responsive to both RPD #17 and #25. Doc. No. 126 at 2. Judge Kelley held a hearing, at which QuoteWizard argued production would be disproportionately burdensome, exceed the scope of Phase 1 discovery, and that the documents were not in its possession within the meaning of the rules. Doc. No. 150-3 at 3–13. After hearing argument, Judge Kelley orally ordered QuoteWizard to "provide all the text messages either in Dri[p]s or QuoteWizard's possession concerning the approximately 48,000 calls." Id. at 18. That same day she reiterated this order in writing, slightly broadening its scope. Doc. No. 132 ("QuoteWizard shall provide . . . all comments by consumers related to the 46,000 Do Not Call requests, whether pertaining to 'complaints' about the texts received or simply 'opt-outs' . . . .").

QuoteWizard objected to that portion of Judge Kelley's order requiring production of the Do Not Call requests, arguing inter alia that the documents are not within its possession, custody, or control. Doc. No. 133 at 6–11. Mantha opposed, highlighting that QuoteWizard had previously been able to secure consumer communications from Drips when convenient for its own arguments. Doc. No. 136. After review, the undersigned overruled QuoteWizard's Objection, holding, as relevant here: "The record before the Court establishes that, under any standard of review, the relevant documents are within the custody or control of QuoteWizard

4

(even if not currently within its possession)." Doc. No. 144 (citing Doc. No. 136-9). QuoteWizard now seeks reconsideration of this Order. Doc. No. 149. QuoteWizard's only argument is that the documents at issue are not in its possession, custody, or control.

II. DISCUSSION

A. Control

QuoteWizard has been ordered to produce the Do Not Call requests on three prior occasions. Now, for the fourth time, QuoteWizard argues against production. At each point in this process, QuoteWizard has introduced new arguments and evidence to support its refusal. Originally, QuoteWizard argued production would be burdensome[1] and beyond the scope of Phase 1 discovery. Doc. No. 104-1 at 7, 9; Doc. No. 104 at 11–18. When Judge Kelley rejected this argument, QuoteWizard withheld production until Mantha was again forced to move to compel. Doc. No. 126 at 2. In opposition to Mantha's motion, QuoteWizard again primarily contested relevance but also suggested (without offering supporting evidence) that the Do Not Call requests were not in its possession, custody, or control. Doc. No. 150-3 at 3–13. When these arguments lost the day before the magistrate judge, QuoteWizard objected to the undersigned, submitting new evidence to suggest that it does not have access to the communications. See Doc. No. 133-1; Doc. No. 133-2; cf. Cortes-Rivera v. Dep't of Corr. & Rehab. of P.R., 617 F. Supp. 2d 7, 14 (D.P.R. 2009) (explaining that generally the presentation of fresh evidence when objecting to a magistrate judge's ruling is procedurally improper). Now QuoteWizard challenges the undersigned's order overruling its objection, once again offering new evidence into the

---

[1] QuoteWizard did not support this burden argument with affidavits, evidence, or even explanations demonstrating the specific burdens imposed by compliance. See Doc. Nos. 104, 124, 133, 143-2; 149. The somewhat conclusory paragraph buried in an email from counsel for Drips to counsel for QuoteWizard, itself attached to an exhibit to QuoteWizard's Objection, Doc. No. 133-3 at 3.

5

record. See Doc. No. 150, Doc. No. 150-1, Doc. No. 151; cf. Parker Waichman LLP v. Salas LC, 322 F.R.D. 436, 439 (D.P.R. 2017) (explaining that generally the presentation of fresh evidence previously available to the parties in support of a motion for reconsideration is procedurally improper). In total, nearly five months have now elapsed from when QuoteWizard was first ordered to produce these documents. Doc. No. 112.

The Court begins by framing the issue. As relevant here, Judge Kelley ordered QuoteWizard to produce three distinct batches of documents (as they relate to consumer communications in response to text messaging conducted on its behalf by Drips). First, she ordered QuoteWizard to produce "all documents evidencing any complaints" received by QuoteWizard. Doc. No. 112. Second, she ordered QuoteWizard to produce "all 'Do Not Call' requests." Id. And third, she ordered QuoteWizard to produce "all comments by consumers related to the 46,000 Do Not Call requests." Doc. No. 132. The Court notes that Judge Kelley's Order was not limited to just the 46,000 Do Not Call requests documented by Drips—she ordered production of all "complaints", all Do Not Call requests, and all comments related to the Do Not Call requests. QuoteWizard has only objected to production of the roughly 46,000 Do Not Call requests it alleges are held by Drips. It has not objected to any other portion of Judge Kelley's orders. The Court therefore assumes that QuoteWizard has already produced all responsive complaints, requests, or comments within its possession, custody, or control (other than those held by Drips, which are the subject of QuoteWizard's Objection). The Court further assumes that the three categories of consumer communications at issue are in the possession and custody of Drips. The only remaining question is whether the documents are within QuoteWizard's control.

6

As used in Rule 34, "[c]ontrol is defined as the legal right, authority or ability to obtain documents on demand." Addamax Corp. v. Open Software Found., Inc., 148 F.R.D. 462, 467 (D. Mass. 1993) (citation omitted). "Such 'control' may be established by the existence of a principal-agent relationship or a legal right pursuant to a contractual provision." Rosie D. v. Romney, 256 F. Supp. 2d 115, 119 (D. Mass. 2003) (citations omitted). Here, four factors demonstrate that Mantha has met its burden and established QuoteWizard's control over the three categories of documents identified above to the extent they are within the possession of Drips.

**First,** QuoteWizard has already demonstrated that it has the ability to obtain consumer comments from Drips. During a prior discovery dispute, QuoteWizard secured copies of consumer communications between Drips and Mantha and produced these documents in support of its position. Doc. No. 51-2 (consumer communications between Drips and Mantha); see also Doc. No. 51 at 3–4 (QuoteWizard relying on these communications in argument). QuoteWizard's demonstrated capacity to secure consumer communications from Drips when doing so is advantageous to its position supports the conclusion that these documents are within QuoteWizard's control, even if they are currently held by Drips.

**Second,** the nature of the relationship between QuoteWizard and Drips strongly supports the conclusion that QuoteWizard has control of the consumer communications at issue. QuoteWizard hired Drips to undertake communications with QuoteWizard's actual or potential customers. The contract between the two companies describes Drips as QuoteWizard's "agent". Doc. No. 136-10 at 3 (". . . [Drips], as [QuoteWizard's] agent, will develop and implement a marketing plan for [QuoteWizard's] benefit . . . ."); Id. (". . . [QuoteWizard] will direct [Drips], as [QuoteWizard's] agent, to contact consumers . . . ."); see also McKesson Corp. v. Islamic

7

Republic of Iran, 185 F.R.D. 70, 78 (D.D.C. 1999) ("[T]he control required for Rule 34 purposes may be established by virtue of a principal-agent relationship . . . ."); cf. Restatement (Second) of Agency § 381 (1958) ("Unless otherwise agreed, an agent is subject to a duty to use reasonable efforts to give his principal information which is relevant to affairs entrusted to him . . . .").[2] Further, the contract requires that Drips defer to QuoteWizard in all related discovery disputes, stating that QuoteWizard shall "be responsible for responding to said [subpoenas or other such discovery requests]." Id. at 7. The contract also limits how Drips may use certain data it receives during the course of its work for QuoteWizard, id. at 5, indicating the consumer communications at issue were collected on QuoteWizard's behalf and for QuoteWizard's benefit. And finally, QuoteWizard and Drips have cross-indemnified each other for violations of the TCPA, which further suggests QuoteWizard holds the right to access and audit Drips' records, when necessary.

**Third,** QuoteWizard concedes that it had the authority and the means to audit the Do Not Call requests that Drips collected on its behalf. All agree Drips provided QuoteWizard with links (now disabled) granting electronic access to its records so as to allow QuoteWizard to "audit . . . the DNC's [Do Not Call requests] from all of [QuoteWizard's text messaging] campaigns." Doc. No. 136-9. The Court acknowledges the new declaration from Tricia Winkler, in which she attests: "My memory is that the [audit links] did not pertain or link to records of the underlying consumer communications that led to Drips classifying the communications as 'do not call' requests." Doc. No. 151 ¶ 7; see also id. ¶ 8 ("I have not had access to the consumer

---

[2] Here, the contract both expressly creates and disclaims a principal-agent relationship. Doc. No. 136-10 at 8–9. It is well established "a party cannot simply rely on statements in an agreement to establish or deny agency." Butler v. McDonald's Corp., 110 F. Supp. 2d 62, 67 (D.R.I. 2000). Agency is a factual question and courts look to "ascertain the factual relation of the parties to each other" when determining its existence. Restatement (Second) of Agency § 1 (1958). The Court's determinations in this regard rest on a reading of all of the contract's terms and the dealings described in the text.

8

communications sent directly to Drips that Drips ultimately classified as 'do not call' requests."). But Winkler's present representations appear to be in some tension with a prior affidavit she filed where she attested to having personal knowledge of the contents of the Do Not Call requests.[3] In any event, the right to audit implies the right to access the underlying data and the existence of these audit links therefore further supports the conclusion these records were held for QuoteWizard's benefit and are subject to their control.

**Fourth,** at the outset of this litigation, QuoteWizard represented "that it ha[d] placed Drips, LLC on notice of this litigation and ha[d] <u>instructed</u> Drips, LLC to preserve all evidence relating to the text communications to the plaintiff and other putative class members [necessarily encompassing the 46,000 Do Not Call requests at issue here]," and that Drips had "confirmed it is in possession of records evidencing the text communications [at issue] and ha[d] agreed to preserve all such documents." <u>Doc. No. 33 at 1</u> (emphasis added). That QuoteWizard issued Drips instructions regarding the preservation of these records, and that Drips agreed to abide by those instructions, further supports the conclusion that these records are held by Drips on QuoteWizard's behalf and subject to QuoteWizard's control.

Based upon these considerations, the Court concludes QuoteWizard has control, within the meaning of Federal Rule of Civil Procedure Rule 34, of the "complaints," "requests," and other communications made to Drips in response to the marketing campaigns underlying the claims in this lawsuit, including the roughly 46,000 Do Not Call requests Drips received. The Court therefore affirms its prior Order requiring production of these documents.

---

[3] In a prior affidavit, Winkler attested to certain facts based on her "personal knowledge of QuoteWizard's corporate records and practices" and "upon [her] review of those records." <u>Id.</u> 151 ¶ 1. As relevant here, she attested to the substance of the Do Not Call requests at issue, representing they "are not complaints from . . . consumers and do not indicate that the consumers did not originally consent to be contacted." <u>Id.</u> ¶ 6.

9

This ruling resolves the arguments raised by QuoteWizard's Motion for Reconsideration. Before concluding, however, several further points require clarification in light of the extensive and heated litigation by the parties over these discovery orders.

B. <u>Scope of Order</u>

The Court first clarifies the nature of the communications at issue in this Order. Judge Kelley's Order was not limited to just the 46,000 Do Not Call requests documented by Drips—she ordered production of <u>all</u> "complaints", <u>all</u> Do Not Call requests documented by Drips, and <u>all</u> comments related to the Do Not Call requests. As noted above, her Order encompassed documents currently in QuoteWizard's possession and custody, as well as those under its control (even if currently held by Drips). What is more, aspects of Judge Kelley's Order stretch beyond the 46,000 Do Not Call requests the parties have focused upon in briefing. While complaints and Do Not Call requests may overlap in the sense that one document or text communication may qualify as both a complaint and a Do Not Call request, not all complaints necessarily constitute Do Not Call requests. Similarly, not all Do Not Call requests, contrary to Mantha's assertion, necessarily constitute complaints. And obviously, comments relating to the Do Not Call requests may well be a category all on their own. Judge Kelley ordered production of all three categories of documents and the Court has reaffirmed that Order, as explained herein.

C. <u>Drips' Obligations Under this Order</u>

This Order does not impose any obligations on Drips. The record before the Court suggests Drips has taken the position that any responsive documents it possesses are not subject to QuoteWizard's possession, custody, or control. This Order, though making certain determinations about the relationship between Drips and QuoteWizard, does not bind Drips for the obvious reason that Drips is not before the Court. In addition, the Court notes that Drips has

10

never sought to intervene, file an amicus brief, or otherwise place its views before the Court except indirectly as noted below.[4]

　　D.　Burden

On March 15, 2021, with its Motion for Reconsideration pending before the Court, QuoteWizard filed a notice advising the Court it had served a subpoena on Drips for the documents the Court has ordered QuoteWizard to produce. Doc. No. 161. The notice also advised the Court that Drips has filed a motion to quash QuoteWizard's subpoena, pursuant to Rule 45, in Drips' home district of the Northern District of Ohio. Id.[5] The Court's preliminary review of the filing indicates that Drips is making, inter alia, a burden argument supported by specific evidence. See, e.g., Doc. No. 161-4. QuoteWizard has asserted that the filing by Drips bears on QuoteWizard's Motion for Reconsideration. Doc. No. 161. Burden is, of course, always a relevant consideration in discovery rulings. But this is the first occasion on which the Court has been presented with evidence of burden. QuoteWizard has never submitted affidavits or other evidence to the Court to support its conclusory assertions of burden.

During the voluminous proceedings on Mantha's straight forward discovery requests, QuoteWizard has at various points objected, inter alia, that the documents are beyond the scope of Phase 1 discovery,[6] that Mantha's Rule 34 request violated Rule 45, and that production

---

[4] Drips is the subject of a subpoena from Mantha seeking much the same information that the orders at issue require QuoteWizard to produce. To date, as far as the Court is aware, Mantha has not sought to compel compliance with the subpoena.

[5] For procedural reasons, Drips' Motion to Quash appears to have been refiled with the United States District Court for the Northern District of Ohio under a new docket number sometime after the Court received QuoteWizard's notice. See Drips Holdings, LLC v. QUOTEWIZARD.COM, LLC, 5:21-mc-00017-PAB (N.D. Ohio filed Mar. 15, 2021).

[6] In its Objection to the undersigned, QuoteWizard renewed its earlier arguments that production of these requests exceeded the scope of Phase 1 discovery. Doc. No. 133 at 13–15. The undersigned rejected this argument in ruling on QuoteWizard's Objection, holding that Judge Kelley's determination the documents were relevant was not "clearly erroneous or [] contrary to

would be burdensome. These objections were considered and rejected at different stages of adjudication. QuoteWizard also raised objections regarding its relationship with Drips, specifically with regard to whether certain categories of documents possessed by Drips are within its custody or control, an argument the Court today rejects.

QuoteWizard's notice raises burden in a way that it has failed to raise it to date. Doc. No. 161-4. The litigation over these discovery requests has proceeded in a piecemeal fashion and has already consumed substantial attorney and judicial resources, including multiple hearings before Magistrate Judge Kelley as well as rulings by her and rulings by the undersigned. Nonetheless, the Court shall consider these newly articulated burden concerns which, in fairness, Mantha ought to be given the opportunity to brief. Because these disputes have already substantially delayed this case, Mantha shall respond to QuoteWizard's latest filing, Doc. No. 161, within five business days. In so doing, Mantha's response shall not only address the factual basis for burden but also the applicable legal standard.

E. QuoteWizard's Preservation Obligations Going Forward

Previously, QuoteWizard represented to the Court that the documents presently at issue were being preserved by Drips. Now, QuoteWizard has filed documents with the Court indicating that Drips uses a system for archiving its data after sixty days which, according to Drips, is so unwieldly that accessing these documents would require an enormous allocation of resources and could potentially result in the company being forced to shut down. Doc. No. 161-2 at 12.

---

law." Doc. No. 144 (quoting Fed. R. Civ. P. 72(a)). QuoteWizard chose not to renew this objection in its Motion for Reconsideration. See Doc. No. 158.

12

Given the Court's conclusion that these consumer communications are within QuoteWizard's control and given the unwieldly archiving system employed by Drips, QuoteWizard shall show cause why the Court should not require it, going forward, to ensure preservation of all communications (sent and received) regarding all marketing campaigns conducted by Drips on its behalf in a more easily accessible format. This filing is due fourteen days from today.

III. CONCLUSION

For the foregoing reasons, QuoteWizard's Motion for Reconsideration (Doc. No. 149) is DENIED except that the Court reserves on the burden arguments raised by the supplemental filing. Mantha's response is due by Tuesday March 23, 2021. QuoteWizard may file a reply, not to exceed five pages, without further leave of Court, by March 25, 2021. The parties shall provide the judicial officer in the case pending in the Northern District of Ohio with a copy of this ruling.

SO ORDERED.

/s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge

13