# EXHIBIT 3

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

JOSEPH MANTHA on behalf of themselves and others similarly situated,

    Plaintiff,

v.

QUOTEWIZARD.COM, LLC

    Defendant.

Case No. 1:19-cv-12235-LTS-PK

Leave to File Granted March 26, 2021, ECF 168

## PLAINTIFF'S SUR-REPLY TO COURT'S REQUEST FOR BRIEFING ON CLAIM OF BURDEN AS TO THE PRODUCTION OF DO NOT CALL REQUESTS

In its filing at ECF#165, QuoteWizard offers a "compromise" and asserts that "at most," it should only be compelled to produce a "random sampling" of the 46,000 Do Not Call requests at issue (the "DNC Requests"). It claims that such a limitation would address Drips' claim of burden, although even its proposed "compromise" comes with the significant hedge that "QuoteWizard is not in a position to raise, or waive, Drips' objections." ECF 165 at 2, n. 1.[1]

QuoteWizard's positions on discovery make it plain that the time has come to lift bifurcation of discovery in this case. QuoteWizard's continued arguments against production of the DNC Requests simply ignore the prior four orders from this Court that these records are relevant even as to Mr. Mantha's individual claim, are discoverable, and indeed are in the "possession, custody or control" of QuoteWizard.

In its latest attempt (now fifth) to relitigate the relevance of the underlying discovery

---

[1] Plaintiff notes that he has moved to intervene in the Drips Motion to Quash action in the Northern District of Ohio.

1

request for the DNC Requests, QuoteWizard continues to protest now claiming that since it never saw the DNC requests, they are irrelevant. QuoteWizard, however, had the ability to review the DNC Requests, as it had the right to audit the DNC Requests via an internet link provided to QuoteWizard by Drips. QuoteWizard chose not to. Having ignored the 46,000 DNC Requests, QuoteWizard now asks this Court to reward it for doing so by accepting the hollow claim that since it ignored the DNC Requests, they are irrelevant as to whether QuoteWizard's violation of the TCPA was knowing or willful, or whether the consent it allegedly obtained from all consumers, including Mr. Mantha, was legitimate. Similarly, QuoteWizard now claims for the first time that the DNC Requests are irrelevant as to whether its violation of the TCPA was knowing or willful because such a claim, in its view, requires actual knowledge. In support, QuoteWizard claims that willfulness requires a showing that the defendant "knew their conduct did in fact violate the TCPA" citing *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 899 (W.D. Tex. 2001). This is not the holding of that case. Rather, a finding of willfulness does not require actual knowledge of a violation of the TCPA, rather it requires that the caller "have reason to know, or should have known, that his conduct would violate the statute." *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 899-901 (W.D. Tex. 2001). As the Fourth Circuit explained in upholding a finding of willfulness against Dish Network, LLC, protestations of ignorance do not preclude a finding of willfulness:

> Dish seems to think that so long as it includes certain language in a contract or issues the occasional perfunctory warning to a retailer the court will not look past the formalities and examine the actual control exercised by Dish. Moreover, Dish fails to recognize that repeated expressions of ignorance as to a widespread problem can evince more than simply negligence; they can also be a sign that the violations are known, tolerated, and even encouraged.

*Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643, 662-63 (4th Cir. 2019).

QuoteWizard argues at length that its discovery obligations should be limited because Mr. Mantha is only litigating an individual claim worth $12,000. The Court should not permit

2

QuoteWizard to use the bifurcation of discovery that it argued for over a year ago (over Plaintiff's objection) as both a sword and shield. As the Court is well aware, QuoteWizard has litigated this case as anything but a $12,000 claim.

QuoteWizard further argues that the DNC Requests are not relevant as to consent because "there is no common source of consent underlying the 46,000 consumers who opted out, of QuoteWizard's campaigns generally." ECF 165 at 3. QuoteWizard, of course, has yet to produce any documents evidencing the consent of the 46,000 consumers to receive text spam from QuoteWizard itself, given that discovery was bifurcated in this action initially at QuoteWizard's insistence. Having successfully resisted being required to actually produce the consent evidence it claims exists, QuoteWizard now summarizes the consent evidence of the 46,000 consumers who made DNC Requests in a self-serving way, asks this Court to blindly accept such characterization, and rule in its favor on an issue it has now lost four times.

Given that QuoteWizard was required to be in possession of this consent evidence before it sent the texts at issue, and given that the contract between QuoteWizard and Drips, already before the Court (ECF 136-3), required that QuoteWizard be in possession of such consent proof and to produce it to Drips on two days-notice, QuoteWizard should be required to produce all consent evidence relating in any way to the approximately 46,000 consumers who submitted DNC Requests. If QuoteWizard is going to refer to and self-servingly summarize this evidence, it is only fair that it be produced so it can be determined if, in fact, these consumers did consent to receive text spam from QuoteWizard itself, and that the exact consent language QuoteWizard claims was accepted by these consumers satisfies the requisites of the TCPA. And, as this evidence is in QuoteWizard's possession, its production poses no burden to anyone.

Finally, QuoteWizard's proposed "compromise" that it claims it is unable to make in a binding fashion, does little to finally provide Mr. Mantha with the DNC Requests he has sought

now for the past six months, particularly where QuoteWizard continues to claim it has no power to "bind" Drips. To be clear, it is Mr. Mantha's position that no compromise is warranted here. The next step if QuoteWizard continues to defy the Orders of this Court is to proceed to contempt proceedings. In the alternative, however, if the Court were to seek compromise, at a minimum, QuoteWizard should be compelled to obtain from Drips all Do Not Call requests labelled Tier 1 or Tier 2. The vast majority of the Do Not Call Requests at issue were assigned either Tier 3 or were assigned no tier and labelled "Zero." *See* ECF 136-1. This limitation would address Drips' specious claim of burden, while also providing Mr. Mantha with the most relevant Do Not Call requests- such as those labelled "screamers" Tier 1, or those labelled "I'm only 11" and assigned Tier 2

    QuoteWizard should also be compelled to produce all evidence relating in any way to the alleged consent of the approximately 46,000 consumers who submitted Do Not Call requests, to receive such texts in the first place. These records are already in QuoteWizard's possession and their production presents no burden whatsoever.

    Further, this Court should order QuoteWizard to immediately obtain and preserve the call records that evidence all telemarketing texts sent by Drips to consumers on behalf of QuoteWizard during the class period. As Drips has now admitted to the deficiencies of its evidence preservation practices, the immediate preservation and production of this evidence is paramount to the interests of the putative class.

    Finally, the time has come to recognize that QuoteWizard is inappropriately using the bifurcation of discovery in this case as both a sword and shield. QuoteWizard has aggressively pursued discovery when it is to its perceived benefit and has resisted and obstructed Mr. Mantha from doing the same, with a constant refrain referring back to this Court's original bifurcation order. Such order was initially entered by this Court in reliance on QuoteWizard's representation

4

that this case was frivolous, Plaintiff's counsel had engaged in sanctionable conduct, and QuoteWizard was prepared to move for summary judgment immediately. That was one year ago. Mr. Mantha still awaits QuoteWizard's long threatened Motion for Summary Judgment[2] and looks forward to the opportunity to represent a class of all consumers similarly situated.

RESPECTFULLY SUBMITTED,

PLAINTIFF,

By his attorneys

*/s/ Edward A. Broderick*
Edward A. Broderick
BRODERICK LAW, P.C.
176 Federal Street, Fifth Floor
Boston, MA 02110
Telephone: (617) 738-7080
ted@broderick-law.com

Matthew P. McCue
THE LAW OFFICE OF MATTHEW P. MCCUE
1 South Avenue, Suite 3
Natick, MA 01760
Telephone: (508) 655-1415
mmccue@massattorneys.net

Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

---

[2] Mr. Mantha also respectfully suggests that QuoteWizard be required to commit to a schedule by which it will move for summary judgment, and to identify the specific issues such a motion will relate to.

5

Alex M. Washkowitz<br>
Jeremy Cohen<br>
CW LAW GROUP, P.C.<br>
188 Oaks Road Framingham, MA 01701<br>
alex@cwlawgrouppc.com

Date: March 26, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2021, I electronically transmitted the foregoing to all counsel of record via the electronic filing system.

By: */s/ Edward A. Broderick*
    Edward A. Broderick

6