# EXHIBIT A

| | |
|---|---|
| **From:** | Kevin Polansky <kevin.polansky@nelsonmullins.com> |
| **Sent:** | Wednesday, April 7, 2021 7:30 AM |
| **To:** | Troutman, Eric J. |
| **Cc:** | Christine Kingston; Quinn, Meghan |
| **Subject:** | [EXT] RE: Mantha v Quote Wizard (RE: DRIPs - Berman Case) |

Hi Eric,

Thanks for this information. We will stipulate to the additional time you need for your responsive brief.

Kevin



**KEVIN POLANSKY** **PARTNER**
kevin.polansky@nelsonmullins.com
**ONE FINANCIAL CENTER | SUITE 3500**
**BOSTON, MA 02111**
T **617.217.4720**  F **617.217.4710**
**NELSONMULLINS.COM**   **VCARD**  **VIEW BIO**

---

**From:** Troutman, Eric J. <eric.troutman@squirepb.com>
**Sent:** Tuesday, April 6, 2021 4:15 PM
**To:** Kevin Polansky <kevin.polansky@nelsonmullins.com>
**Cc:** Christine Kingston <christine.kingston@nelsonmullins.com>; Quinn, Meghan <meghan.quinn@squirepb.com>
**Subject:** Mantha v Quote Wizard (RE: DRIPs - Berman Case)

Hi Kevin

As discussed, I was not counsel for Drips in *Berman* and do not have first-hand knowledge of what transpired in that case. Further, the database administrator that worked on the production for Drips at the time is no longer with the company.

That being said, you've asked me for an email setting forth the differences between the production made in that case and the production demanded by the subpoena. While evidence of an unrelated production in an unrelated case seems to bear little—if at all—on the merit of Drips' specifically-supported burden objection in connection with the *Mantha* subpoena, I've discussed with my client and my colleagues have connected with Drips' *Berman* counsel and—in the good faith spirit of cooperation— provide some additional insight here. Drips reserves its right to present all applicable facts, and in an admissible manner, when procedurally appropriate to do so:

1. The production made in *Berman* was *not* the same as the production being requested in the subject subpoena. That production entailed a wholesale extraction of communications from a certain set of consumers, it did not entail an analysis of the "trigger" for DNC reports. Moreover the *Berman* production pertained to a more limited set of campaigns than the work at issue here. Any characterization to the contrary is simply inaccurate.

1

2. At the time of the *Berman* production inbound communications from consumers resided on separate tables segregated by client and campaign. Extracting the data was, therefore, a relatively simple table extract process. It is my understanding that Drips' counsel in *Berman* did not even object to the production as the data was stored in a manner that made identification and extraction relatively simple. That table structure simply does not exist within Drips' archive system for this data. While Drips lacks the institutional memory to definitively explain the process used to obtain the *Berman* data, it is certain that whatever process was used at the time would simply not work owing to the different table structure and database environment.
3. In addition to the differences in how the data is stored, Drips now possesses much more data and many more clients, meaning that the day-to-day demands on its production server resources are much higher than at the time of the *Berman* extraction and that the processing time needed to pull the bulk records today is much higher than it was at the time of *Berman*. Whereas the *Berman* production was extracted in a relatively short timeframe—no one I have spoken to has been able to tell me precisely how long it took—the toll on Drips' production server today would be much higher and is expected to take ~700 hours, as laid out in Mr. Martindale's declaration.
4. Drips only has production server resources. Tying up those servers for 700 hours of computations related to the *Mantha* production means that Drips' core communications platform product will be in jeopardy of significant delays and possible failure during that lengthy timeframe. While the server capabilities have not changed since *Berman,* as just explained the *Mantha* production will put far *far* more strain on the production server resources because: i) the coding to search for the records at issue will need to be more extensive (as explained in Mr. Martindale's declaration); ii) the table structure of the archive is not optimized for the extraction as it fortuitously was for the *Berman* extraction; iii) the additional processing burden on the servers occasioned by Drips new clients and business workflows that did not exist at the time of *Berman*; and iv) the far greater amount of data that needs to be searched in the archive system than existed in the table at issue in *Mantha.*
5. Additionally, it is important to note that the *Berman* data was not audited by Drips. It was simply produced out of a table and transferred to counsel. That was reasonable in *Berman* given the simplicity of the pull. But it would not be reasonable here when the search requires multiple parameters to identify potentially responsive data across a greater number of campaigns and in a data environment when unrelated data—i.e., records belonging to other Drips customers—might be easily ensnared in common coding efforts. Drips contemplates auditing any production in response to the subpoena to make sure the custom code written to identify and extract responsive data elements from the archive actually worked as it was supposed. This too adds time.
6. I understand that Quote Wizard has offered "resources" to assist Drips. Without question the addition of additional server resources could help accelerate the extract and—more importantly—take the pressure off of Drips' critical production servers. That being said "scaling up" those resources requires additional work by system architects and developers above and beyond the ~500 hours of development time already contemplated by the project. Additionally, Drips relates that it would build a more complex system that allows "multi-threading" to take advantage of the upgraded server capabilities. That would speed up the processing but, again, would add development time. Drips is unable to estimate precisely how much time would be saved total—ultimately that depends on how powerful and effective the new servers are—but taking the toll off of the production servers is very important to Drips. As such, I expect my client will have a proposal to Quote Wizard shortly with respect to additional server resources it would be willing to deploy to assist

Obviously my client is surprised and dismayed that it must contemplate adding resources to its server environment--in addition to spending hundreds of hours writing and testing custom code—in order to comply with a subpoena. This is not, at all, consistent with the need to protect third-parties like Drips of undue and unreasonable burden and only further underscores the appropriateness of quashing the subject subpoena.

Additionally, it should be noted that we have offered to extract a sampling of data so that Quote Wizard and Plaintiff's counsel can have something to work with in the Massachusetts litigation. Obviously Drips has nothing to hide here and will gladly provide data that is easily within reach—or that can be obtained within a reasonable timeframe. This includes allowing the parties to select specific records—using whatever criteria they choose— for Drips to research and provide information on as quickly as possible. It is my understanding, however, that we are in an "all or everything" situation and that the parties will not agree to a sampling to take some of the burden off of Drips' shoulders.

Finally, I note your surprising filing in the Ohio matter today. We intend to seek seven days leave to file a response. Will Quote Wizard stipulate? If not we will note your opposition.



**Eric J. Troutman**
Partner
Squire Patton Boggs (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071
T  +1 213 689 6510
O  +1 213 624 2500
F  +1 213 623 4581
eric.troutman@squirepb.com | squirepattonboggs.com
*Do Better*: tcpaworld.com

---

**From:** Kevin Polansky <kevin.polansky@nelsonmullins.com>
**Sent:** Monday, April 5, 2021 12:03 PM
**To:** Troutman, Eric J. <eric.troutman@squirepb.com>
**Cc:** Christine Kingston <christine.kingston@nelsonmullins.com>
**Subject:** [EXT] DRIPs - Berman Case

Hi Eric,

Following up on our call from Friday, are you still anticipating providing us with information regarding the prior document production from the Berman case?  Our deadline to file QuoteWizard's response is April 7th, so the sooner you can provide the information the better.

Thank you

Kevin

 **NELSON MULLINS**

**KEVIN POLANSKY   PARTNER**
kevin.polansky@nelsonmullins.com

**ONE FINANCIAL CENTER | SUITE 3500**
**BOSTON, MA 02111**
T 617.217.4720    F 617.217.4710
**NELSONMULLINS.COM**    VCARD   VIEW BIO

**Confidentiality Notice**
This message is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately either by phone (800-237-2000) or reply to this e-mail and delete all copies of this message.

---
45 Offices in 20 Countries

This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person.

For information about how Squire Patton Boggs processes UK and EU personal data that is subject to the requirements of applicable data protection laws, please see our Privacy Notice regarding the processing of UK and EU personal data about clients and other business contacts at www.squirepattonboggs.com.

Squire Patton Boggs (US) LLP is part of the international legal practice Squire Patton Boggs, which operates worldwide through a number of separate legal entities. Please visit www.squirepattonboggs.com for more information.


#US
---