# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# AT AKRON

| | |
|---|---|
| DRIPS HOLDINGS, LLC, | |
| Petitioner, | Case No: 5:21-mc-00017-PAB |
| v. | Judge Pamela A. Barker |
| QUOTEWIZARD.COM LLC, | Arising from *Joseph Mantha v. QuoteWizard.com, LLC*, No. 1:19-cv-12235-LTS (D. Mass.) |
| Respondent. | |

## RESPONDENT'S OPPOSITION TO PETITIONER'S MOTION TO QUASH

Respondent QuoteWizard.com LLC ("QuoteWizard") hereby respectfully submits its Opposition to Petitioner Drips Holdings, LLC's ("Drips") Motion to Quash the subpoena issued by QuoteWizard.

The very same issues underlying Drips's motion have already been decided, or are pending decision, by the District of Massachusetts in the underlying case. To avoid the very serious possibility of inconsistent results between two courts of equal jurisdiction, this Court should either grant the pending motion to transfer this matter to the District of Massachusetts, or stay decision until that Court has completed its findings/rulings concerning the same issues and records and then apply the same in comity. There is no reason or basis for this Court to re-adjudicate the same issues already decided or pending decision in the District of Massachusetts, and indeed such re-adjudication would be contrary to the principles of comity and could result in the worst-case scenario of directly inconsistent rulings between two District Courts.

**PROCEDURAL AND FACTUAL BACKGROUND**

In the underlying case, *Joseph Mantha v. QuoteWizard.com, LLC*, Case No. 1:19-cv-12235-LTS (D. Mass.) ("Underlying Case"), discovery proceedings relevant to and controlling of this action continue with respect to the same records at issue herein.

The Underlying Case is a putative class action filed by Plaintiff Joseph Mantha ("Mantha") against QuoteWizard under the Telephone Consumer Protection Act ("TCPA"). Mantha has pleaded two claims under the TCPA on behalf of himself and two putative nationwide classes: one alleging that QuoteWizard used an automated telephone dialing system ("ATDS") to contact him by text message,[1] and the other claiming that he was registered on the National Do Not Call Registry but QuoteWizard sent him two or more solicitations via text message. *See* Underlying Case, Dkt. No. 80 (Amended Complaint).

The text messages were sent to Mantha (and all putative class members) via Drips, QuoteWizard's texting vendor at all relevant times. Drips is not a defendant to the Underlying Case. Drips has confirmed preservation of all texting records through its counsel for the purposes of the Underlying Case, and has also been subject to discovery (a Fed. R. Civ. P. 30(b)(6) deposition and subpoena response) in the Underlying Case. The Underlying Case is currently in Phase I discovery as to Mantha's individual claims only, not his putative class claims. No motion for certification of the proposed classes has been made much less granted.

---

[1] Mantha's ATDS claim and putative class has been rendered meritless by the issuance of the U.S. Supreme Court's decision in *Facebook, Inc. v. Duguid*, 2021 WL 1215717 (2021) (No. 19-511) (holding that definition of ATDS requires the use of random or sequential number generator, and does not apply where a device only stores/dials numbers without use of such random/sequential generator). It remains to be seen whether Mantha will voluntarily dismiss this claim (as Mantha's counsel has not yet responded to QuoteWizard's inquiry), as QuoteWizard submits that he must, or whether QuoteWizard will need to seek dismissal via Court Order.

As noted previously to this Court, the District of Massachusetts in the Underlying Case ordered QuoteWizard to produce to Mantha certain records in the exclusive possession of Drips under the theory that QuoteWizard had "control" over them within the meaning of Fed. R. Civ. P. 34, namely—approximately 46,000 consumer communications made by consumers to Drips when opting out of further communications where Drips had contacted consumers on behalf of QuoteWizard. *See* Underlying Case, Dkt. No. 132 ("QuoteWizard shall provide to plaintiff, by February 1, 2021, all comments by consumers related to the 46,000 Do Not Call requests, whether pertaining to 'complaints' about the texts received or simply 'opt-outs,' made by consumers who received telemarking texts from QuoteWizard (including those made on behalf of QuoteWizard by Drips)."); *id.*, Dkt. No. 144 (overruling objections to decision by Magistrate Judge as to these records); *id.*, Dkt. No. 162 (March 16, 2021 order denying reconsideration on the issue of "control" but reserving ruling on issue of undue burden). *See also* ECF No. 8, Ex. 1 (copy of March 16, 2021 Order in Underlying Case).[2]

Because Drips has refused to produce those records to QuoteWizard to date upon multiple demands, QuoteWizard subpoenaed them from Drips directly. *See* ECF No. 1, Ex. A (copy of Subpoena) (whereby QuoteWizard requests "[a]ll comments made by consumers to Drips related to all Do Not Call Requests (as classified by Drips) made by consumers who received telemarking texts from Drips on behalf of QuoteWizard. For further reference, please see the Orders of the U.S. District Court for the District of Massachusetts ordering production of these records in Drips's

---

[2] Before such Order, QuoteWizard was ordered to produce and did in fact produce all "do not call" requests in its possession, custody, or control—which was a *list* of consumers who had opted out to Drips. Such list was in QuoteWizard's possession because Drips shares that data with QuoteWizard pursuant to its ordinary business practice. However, the actual communications made by consumers to Drips that leads Drips to classify such communications as a "do not call" request (*i.e.*, the records at issue herein) are not shared with QuoteWizard by Drips and such communications are not and have never been in QuoteWizard's possession, custody, or control. Drips is in exclusive possession of them.

3

possession from QuoteWizard, dated January 11, 2021 (ECF No. 132) and February 24, 2021 (ECF No. 144). A copy of the docket with electronic Orders is attached hereto as Exhibit A."). Drips did not comply with the Subpoena but instead filed this action to quash it. *See* ECF No. 1.

Drips's primary argument in moving to quash the subpoena is that a response would cause undue burden. *See* ECF No. 1-1, p. 8 ("Drips seeks the protections of this Court against the undue burden the Subpoena would impose."). *See also id.*, pp. 9-11. Drips also argues relevance and proportionality in the context of undue burden. *See generally* ECF No. 1-1.

After Drips filed its motion to quash, QuoteWizard filed a notice in the Underlying Case, attaching the motion to quash and related documents, to apprise the Court of the motion as it might affect QuoteWizard's then-pending motion for reconsideration of the Order requiring QuoteWizard to produce the records in Drips's possession. In his March 16, 2021 Order on QuoteWizard's motion for reconsideration, the Honorable Leo T. Sorokin took note of Drip's filings in this action and ordered the Parties in the Underlying Case to brief the issue of the alleged undue burden to Drips in producing the records at issue. *See* ECF No. 8, Ex. 1, p. 12 ("[T]he Court shall consider these newly articulated burden concerns"), p. 13 (ordering supplemental briefing on issue of burden, to close on March 25, 2021). Judge Sorokin also ordered the Parties to inform this Court of the March 16, 2021 Order. *See id.*, p. 13.[3] *See also* ECF No. 8.

In response to the March 16th Order, in the Underlying Case, Mantha filed his supplemental briefing on March 23, 2021, QuoteWizard filed its supplemental briefing on March 25, 2021, and Mantha filed a sur-reply on March 26, 2021, regarding the burden to Drips if required to produce

---

[3] QuoteWizard has appealed from the March 16, 2021 Order and related Orders finding that the records in Drips's possession are within QuoteWizard's "control" for the purposes of Fed. R. Civ. P. 34. *See Joseph Mantha v. QuoteWizard.com, LLC*, Case No. 1:19-cv-12235-LTS (D. Mass.), Dkt. No. 169. QuoteWizard has also not waived any right to brief on appeal related issues of relevance, proportionality, and burden. However, this appeal has not affected that Court's jurisdiction to further consider the issue of undue burden. *See* ECF No. 13, Ex. A (continuing to address undue burden after filing of appeal).

the records that are at issue in the subpoena. *See* ECF No. 11, Exs. 2-4. In addressing burden, QuoteWizard attached and referred to Drips's filings in this case, particularly the declaration from Tom Martindale. *See id.*, Ex. 3 (referencing the unredacted Declaration of Tom Martindale).

By Order dated March 31, 2021, Judge Sorokin noted from Mantha's filings that it appeared that Drips had been able to produce similar do not call records, and indeed approximately 226,000 of them, in a putative class action case in the Northern District of California. *See* ECF No. 13, Ex. A (copy of March 31, 2021 Order in Underlying Case), p. 3 ("Mantha points out Drips was previously able to produce 226,434 consumer Do Not Call requests, seemingly similar in nature to the Do Not Call requests at issue here, in another proceeding before the United States District Court for the Northern District of California. Doc. No. 163 at 2–3 (citing Berman v. Freedom Fin. Network, LLC, 400 F. Supp. 3d 964, 977 (N.D. Cal. 2019) (discussing, and citing to, documents on the docket of that case evincing Drips' production of 226,434 opt out requests))).

Judge Sorokin noted that this might be inconsistent with Drips's argument that producing the 46,000 communications at issue herein would constitute undue burden. *See id.*, p. 4 (it "appears … that Drips has previously produced records practically identical in nature to those presently at issue, and in much greater volume. This evidence sits in apparent tension with QuoteWizard's (and Drips') repeated representations that compelled production would impose extraordinary burdens on Drips.").

However, Judge Sorokin provided QuoteWizard and/or Drips seven days to file supplemental briefing to address why Drips was able to produce the records in that other case but was arguing that producing similar records herein would be unduly burdensome. *See id.*, pp. 4-5 ("The Court recognizes, however, that Drips' prior production occurred in the past and that there may be factors regarding that production of which the Court is unaware. The Court therefore makes

no determination at this time as to whether QuoteWizard has carried its burden. The Court shall allow QuoteWizard to submit a supplemental filing explaining why production of the documents at issue would constitute undue burden, in light of the evidence discussed above. ***Drips is also invited to submit its own filing addressing its prior production, should it so choose. Any such appearance by Drips shall be deemed to be for the limited purpose of addressing this question and shall not be construed as consent to the Court's jurisdiction more generally***." (emphasis added)).

QuoteWizard filed its supplemental briefing on April 7, 2021. Because QuoteWizard has no personal knowledge of Drips's prior production in the Berman Case, QuoteWizard reached out to Drips's counsel to provide any explanation why Drips was able to produce similar records in that case but claimed undue burden here. Drips only offered an e-mail from its counsel, which QuoteWizard filed with the Court in the Underlying Case. *See* **Exhibit AA** – ***Copy of QuoteWizard's April 7, 2021 Supplemental Brief, Affidavit, and Exhibit in Underlying Case***. Because Drips signaled that it intended to hold back certain briefing/information concerning undue burden, and concerning the Berman Case production specifically, QuoteWizard noted the same in its supplemental brief and has asked that Court to stay a ruling on undue burden until such time that this Court rules on Mantha's pending motion to intervene/transfer. *See* ECF No. 9. *See also* Ex. AA, pp. 4-5.

## APPLICABLE LEGAL STANDARD

Under Federal Rule of Civil Procedure 45, parties may command a nonparty to produce documents. Fed. R. Civ. P. 45(a)(1). The movant bears the burden of persuading the court that a subpoena should be quashed. *See, e.g.*, *Baumgardner v. Lousiana Binding Serv.*, 2013 U.S. Dist.

LEXIS 27494, at *4 (S.D. Ohio Feb. 28, 2013); *Williams v. Wellston City Sch. Dist.*, 2010 U.S. Dist. LEXIS 122796, at *21 (S.D. Ohio Nov. 2, 2010).

**ARGUMENTS & AUTHORITIES**

**A. The Court Should Transfer the Matter or Stay Consideration Pending Judge Sorokin's Final Rulings**

As noted *supra*, the same issues that Drips has raised herein concerning the same records have been adjudicated or are pending final adjudication in the Underlying Case.

As to relevance and proportionality, Judge Sorokin has already overruled QuoteWizard's arguments. *See* Underlying Case, Dkt. No. 144 ("In an Order dated January 11, 2021, Judge Kelley ordered QuoteWizard to produce 'all comments by consumers related to the 46,000 Do Not Call requests... made by consumers who received telemarking texts from QuoteWizard (including those made on behalf of QuoteWizard by Drips).' Doc. No. 132. QuoteWizard has Objected (Doc. No. 133) to this most recent order. … Nor can the Court say that Judge Kelley's determinations as to the scope of the dispute, the relevance or proportionality of the request, and the question of undue burden were 'clearly erroneous or is contrary to law.' Fed. R. Civ. P. 72(a).").

As to undue burden relating to Drips's claim (raised herein for the first time via its motion to quash and Declaration of Tom Martindale) that production would be unduly burdensome even to the alleged point of possibly threatening its ongoing business operations, Judge Sorokin has ordered currently ongoing supplemental briefing. QuoteWizard suspects that Judge Sorokin will issue a further, if not final, ruling on undue burden sometime after April 14, 2021, which is the deadline for Mantha to file a supplemental brief regarding the Berman Case production.

Once Judge Sorokin issues this ruling, all aspects of the dispute will be complete, obviously pending QuoteWizard's appeal to the First Circuit. Although that appeal will primarily focus on the finding that Drips's records are within the control of QuoteWizard, QuoteWizard also reserves

7

its right to brief relevancy, proportionality, and undue burden. QuoteWizard also reserves the right to further appeal from any adverse decision issued by Judge Sorokin on the issue of undue burden. Although QuoteWizard fully intends to protect its interests on appeal, the point of the matter is that the dispute is pending/subject to resolution in that District and before the First Circuit.

In light of the fact that these same issues having already been adjudicated or are going to be adjudicated by Judge Sorokin in the Underlying Case, subject to the final word by the First Circuit on appeal, there is no good reason or basis for this Court to re-review the same issues in this case, much less on a potentially different or expanded record where Drips has been offered but has rejected the opportunity to brief certain issues in the Underlying Case (*see* ECF No. 13, Ex. A, pp. 4-5).

For all of the reasons set forth in QuoteWizard's response to Mantha's motion to transfer/intervene (*see* ECF No. 13) and QuoteWizard's motion to stay (ECF No. 11) (both of which QuoteWizard incorporates herein), QuoteWizard respectfully asks that the Court either transfer this matter to the District of Massachusetts[4] or at least stay consideration of the matter until Judge Sorokin has issued his final rulings on the same issues. QuoteWizard suggests that transfer would best alleviate Drips's apparent concern about not being heard in the District of Massachusetts in connection with its rulings on these same issues (although it had an opportunity to be heard); if the case is transferred, Drips's filings herein will be considered by that Court.

---

[4] In opposing transfer, Drips has not articulated any actual prejudice that would result. *See generally* ECF No. 14. Though it contends it would have to obtain local counsel in Massachusetts, this is not true—Rule 45(f) specifically allows its attorneys in this case to appear in the District of Massachusetts if transferred without the need for local counsel. *See* Fed. R. Civ. P. 45(f) (after transfer, "if the attorney for a person subject to a subpoena is authorized to practice in the court where the motion was made, the attorney may file papers and appear on the motion as an officer of the issuing court."). This would allow *both* of Drips's attorneys herein to appear in the District of Massachusetts if transferred.

For the reasons set forth particularly in ECF No. 13, QuoteWizard submits that the same issues concerning the same records must be decided consistently on the same record between both courts. The best way to accomplish such a result is likely for this Court to simply transfer the matter to the District of Massachusetts. Alternatively, the Court could stay this matter until Judge Sorokin has made his final rulings and then apply such rulings in comity. Any alternative result would violate fundamental principles of comity for the reasons set forth *infra* Section B.

Drips may respond to this filing by claiming that it should be heard anew in this Court on the same issues already adjudicated or pending adjudication by Judge Sorokin in the Underlying Case. But Drips has made a strategic decision (1) not to seek a protective order in the Underlying Case as it could have (*see* Fed. R. Civ. P. 26(c)(1) ("A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending")) and (2) not to submit its own briefing and evidence in the Underlying Case, through QuoteWizard or directly, despite express invitation to do so without appearing more generally (*see* ECF No. 13, Ex. A, pp. 4-5 ("Drips is also invited to submit its own filing addressing its prior production, should it so choose. Any such appearance by Drips shall be deemed to be for the limited purpose of addressing this question and shall not be construed as consent to the Court's jurisdiction more generally.")).

Although Rule 45 provides that a motion to quash is generally brought where compliance is required, *see* Fed. R. Civ. P. 45(d)(1), courts have consistently found that "the district court in which the action is pending has a responsibility to control discovery, including to quash subpoenas." *Garity v. Donahoe*, 2014 U.S. Dist. LEXIS 17912, at *16, 2014 WL 547760 (D. Nev. Feb. 11, 2014) (citing *Platinum Air Charters, LLC v. Aviation Ventures, Inc.*, 2:05-cv-1451, 2007 U.S. Dist. LEXIS 2298, 2007 WL 121674, at *3 (D. Nev. Jan. 10, 2007) ("General discovery issues should receive uniform treatment throughout the litigation, regardless of where the discovery is

pursued. The court, therefore, concludes that it can and should address the issues raised by [defendant's] request for a protective order, as these issues extend well beyond the matter of a specific subpoena.")). *See also Todd v. XOOM Energy, LLC*, 2018 U.S. Dist. LEXIS 178988, at *4, 2018 WL 5081156 (D. Md. Oct. 17, 2018) ("Although motions to quash subpoenas are generally brought in 'the court for the district where compliance is required,' Rule 45 'does not alter the broader concept that the district court in which an action is pending has the right and responsibility to control the broad outline of discovery.'" (quoting *Champion Pro Consulting Group, Inc. v. Impact Sports Football, LLC*, 2014 U.S. Dist. LEXIS 77145, 2014 WL 2559285, at *1 (M.D.N.C. June 6, 2014))).

At nearly all stages of this discovery dispute since being ordered to produce records in the exclusive possession of Drips, QuoteWizard has both demanded that Drips produce the records to it, but while litigation was ongoing in the Underlying Case that might prevent/moot production, has petitioned Drips to provide it critical information with respect to undue burden on Drips. QuoteWizard has no knowledge of Drips's systems and could not meaningfully present Drips's position on this point. Drips at times has cooperated and provided some information (*see* Ex. AA) but has also expressly stated that it refuses to submit to the jurisdiction of the District of Massachusetts and intends to advance new or additional briefing/arguments/evidence here (*see, e.g.*, ECF No. 14, p. 12, FN2).

This comes at obvious risk to both QuoteWizard and Drips, as Drips is fully aware that the District of Massachusetts has retained jurisdiction on the same underlying issues and records that are at issue herein. To the extent that Drips is holding back information and arguments that bear on the matter of undue burden, thus depriving the District of Massachusetts of such information and arguments, then Drips should not be entitled to advance them for the first time here with full

10

understanding of that risk. This is a clear waste of judicial resources (insofar as it might cause this Court to revisit Judge Sorokin's rulings on an expanded record) and unjust to QuoteWizard, which has been forced to simultaneously defend two cases on the same issues across two different courts on different records. Simply put, QuoteWizard has been unfairly caught between Mantha's pursuit of Drips's records and Drips's refusal to produce those records to Mantha or QuoteWizard; at the very minimum, QuoteWizard is entitled to a consistent ruling across the two cases.

Although QuoteWizard believes that the issue of undue burden *should* be decided upon full briefing and argument from Drips, this could still be accomplished if this Court transfers this matter to the District of Massachusetts. But if the Court chooses not to do that, then the consequences of Drips's risk must fall on Drips, not QuoteWizard; however the District of Massachusetts ultimately rules on the record presented to it, that ruling can and must be binding in this case pursuant to the doctrine of comity.

**B. This Court Should Apply Judge Sorokin's Rulings in Comity**

While noting that Judge Sorokin is still considering the issue of undue burden and thus his ruling are not final, QuoteWizard submits that, to the extent this matter remains in this District and is not transferred, no new rulings should be made. Judge Sorokin's rulings should control all aspects of this dispute. Thus, if Judge Sorokin ultimately overrules the undue burden objection and continues to require QuoteWizard to produce the records, then necessarily the subpoena should not be quashed and Drips should consistently be ordered to produce the records to QuoteWizard. If Judge Sorokin ultimately accepts the undue burden argument and either precludes discovery of the records in total, or limits such discovery, the subpoena should either be recognized as moot in the first instance or should be upheld as coextensive with the discovery allowed by Judge Sorokin.

The doctrine of comity is crucial to the functioning of the U.S. District Courts. The doctrine instructs federal judges to avoid "stepping on each other's toes when parallel suits are pending in different courts." *Smentek v. Dart*, 683 F.3d 373, 376 (7th Cir. 2012); *see also W. Gulf Mar. Ass'n v. ILA Deep Seal Local 24*, 751 F.2d 721, 728 (5th Cir. 1985) (comity requires federal courts to "exercise care to avoid interference with each other's affairs"). Courts have invoked the doctrine of comity, for example, in holding that a district court was precluded from issuing an injunction that conflicted with another district court's decision in the same matter. *See Ulmet v. United States*, 888 F.2d 1028, 1031 (4th Cir. 1989).

By applying comity, courts achieve at least two results: avoiding "an unnecessary burden on the federal judiciary" and preventing "the embarrassment of conflicting judgments." *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979); *see also Mast, Foos & Co. v. Stover Mfg. Co.*, 177 U.S. 485, 488, 20 S. Ct. 708, 44 L. Ed. 856, 1900 Dec. Comm'r Pat. 285 (1900) (comity should "secur[e] uniformity of decision[] and discourag[e] repeated litigation of the same question"). *See also Valley Enters. of Ohio LLC v. Gainey Transp. Servs.*, 2008 U.S. Dist. LEXIS 78970, at *2-3, 2008 WL 4279601 (N.D. Ohio Sep. 16, 2008) ("Comity requires that federal district courts, which are courts of equal rank and coordinate jurisdiction, be careful to avoid unnecessary interference with each other's affairs. As between federal district courts … the general principle is to avoid duplicative litigation." (quotation and citation omitted)).

With respect to discovery motions in particular, in analogous cases, "[c]ourts which have been called upon to decide discovery motions that involve requests to modify or terminate a protective order previously issued by another court, whether state or federal, have frequently felt constrained by principles of comity, courtesy …" *Tucker v. Ohtsu Tire & Rubber Co., Ltd.*, 191 F.R.D. 495, 499-500 (D. Md. 2000); *see also Puerto Rico Aqueduct and Sewer Auth. v. Clow*

*Corp.*, 111 F.R.D. 65, 67-68 (D.P.R. 1986) (proper way for a third party to challenge a protective order is to move to intervene in the action in which it was issued, and principles of comity require a subsequent court to await a ruling by the court that issued the order); *Dushkin Pub 'g Group. Inc. v. Kinko's Serv. Corp.*, 136 F.R.D. 334, 335 (D. D.C. 1991) (declining as a matter of comity and respect for another federal court to modify a protective order issued by the other court and instead requiring the party seeking the modification to first go to the issuing court); *Dart Indus., Inc. v. Liquid Nitrogen Processing Corp. of California*, 50 F.R.D. 286, 291-92 (D. Del. 1970) (in the interest of comity, limiting production and inspection of documents to be produced to those not covered by any protective order of another District Court in a prior lawsuit).

Here, the doctrine of comity compels but one result: that this Court decline to re-adjudicate issues already decided or pending decision by Judge Sorokin. Otherwise, the risk of conflicting decisions between two District Courts arises. For example, if Judge Sorokin ultimately overrules the undue burden objection (*after* considering the materials filed by Drips herein, including the unredacted Declaration of Tom Martindale), but this Court inconsistently quashes the subpoena on undue burden or other grounds already rejected by Judge Sorokin, two District Courts will have reached two directly conflicting decisions potentially appealable to two different Courts of Appeal. This will needlessly spawn even more litigation, time, and expense for all of the parties and the courts, and will leave all involved with complete uncertainty as to which rulings are ultimately binding.

This worst-case scenario comes with a further danger: the risk that QuoteWizard could be punished *by contempt sanctions* as a result of inconsistent rulings. The only way that QuoteWizard can "comply" with an order requiring it to produce records in Drips's exclusive possession is if Drips is in turn ordered to produce the records to QuoteWizard in the first instance. Although

Mantha lacks good faith grounds to pursue contempt sanctions against QuoteWizard (*see* ECF No. 13, p. 7 FN4), Mantha has signaled an intent to pursue that path. Thus, if the District of Massachusetts orders QuoteWizard to produce the records but this Court orders that Drips need not produce them to QuoteWizard, litigation will likely be further multiplied by baseless contempt proceedings and a further appeal if any contempt order enters. This further requires uniformity in the rulings and, therefore, that either the District of Massachusetts hear and decide both matters, or this Court apply that Court's findings herein.

Considering another scenario, if Judge Sorokin ultimately finds undue burden such to not require the production, then the subpoena is obviously moot. There is no need for this Court to re-review and adjudicate the same issues given this additional possibility. There may not even be an active dispute for this Court to resolve if Judge Sorokin finds in favor of QuoteWizard.

Therefore, pursuant to the fundamental doctrine of comity, this Court should abstain from making any substantive rulings on the motion to quash as if it were considering the matter in the first instance. This matter is controlled in total by the ongoing proceedings in the District of Massachusetts.

## CONCLUSION

For all of the reasons stated herein and in ECF Nos. 11 and 13, QuoteWizard respectfully requests that this Court transfer this matter to the District of Massachusetts, or at a minimum stay a decision until that Court renders its forthcoming ruling on undue burden. In either event, the issues underlying the subpoena must be adjudicated consistently with the rulings of the District of Massachusetts to avoid dueling decisions from two District Courts.

[*Signatures on Next Page*]

Respectfully submitted,

Dated: April 8, 2021

*/s/ Kevin P. Polansky*
Kevin P. Polansky (MA BBO #667229)
kevin.polansky@nelsonmullins.com
*Admitted Pro Hac Vice*
Christine M. Kingston (MA BBO #682962)
christine.kingston@nelsonmullins.com
*Admitted Pro Hac Vice*
Nelson Mullins Riley & Scarborough LLP
One Financial Center, Suite 3500
Boston, MA 02111
(t) (617)-217-4700
(f) (617) 217-4710


*/s/ Melissa Foster Bird*
Melissa Foster Bird (Ohio Bar No. 0064670)
Nelson Mullins Riley & Scarborough LLP
949 Third Ave., Ste. 200
Huntington, WV 25701
(304) 526-3500
(304) 526-3599 FAX
melissa.fosterbird@nelsonmullins.com

**Attorneys for Respondent QuoteWizard.com LLC**

**CERTIFICATE OF SERVICE**

       The undersigned hereby certifies that, on April 8, 2021, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all attorneys of record registered with the Court's CM/ECF system as follows, and has e-mailed a copy of this document to the below counsel if not registered:

Jesse L. Taylor, Esq.
Squire Patton Boggs (US) LLP
41 South High Street
Columbus, OH 43215
jesse.taylor@squirepb.com

Eric J. Troutman, Esq.
Squire Patton Boggs (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, CA 90071
eric.troutman@squirepb.com

Matthew P. McCue, Esq.
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, MA 01760
mmccue@massattorneys.net

Edward A. Broderick, Esq.
Broderick Law, P.C.
176 Federal Street, Fifth Floor
Boston, MA 02110
ted@broderick-law.com

Anthony I. Paronich, Esq.
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
anthony@paronichlaw.com

Alex M. Washkowitz, Esq.
Jeremy Cohn, Esq.
CW Law Group, P.C.
188 Oaks Road
Framingham, MA 01701
alex@cwlawgrouppc.com

                                                 */s/ Kevin P. Polansky*