IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| DRIPS HOLDINGS, LLC, | Case No. 1:21-MC-00017-PAB |
| Petitioner, | |
| -vs- | JUDGE PAMELA A. BARKER |
| QUOTEWIZARD.COM, LLC, | |
| Respondent | MEMORANDUM OPINION AND ORDER |

This matter is before the Court on Petitioner Drips Holdings, LLC's ("Drips") Motion to Quash Subpoena to Produce Documents. (Doc. No. 1.) Also pending before the Court are two other motions: proposed intervenor Joseph Mantha's ("Mantha") Motion to Intervene and Motion to Transfer, which Drips opposed (Doc. Nos. 9, 14); and Respondent QuoteWizard.com's ("QuoteWizard") Motion to Stay its Response Deadline to Petitioner's Motion to Quash Pending Forthcoming Rulings that will Affect or Govern this Dispute (Doc. No. 11). For the following reasons, the Court exercises its discretion and TRANSFERS the Motion to Quash to the United States District Court of the District of Massachusetts pursuant to Fed. R. Civ. P. 45(f). Because the Court will transfer Drips's Motion to Quash, Mantha's Motion to Intervene and Motion to Transfer and QuoteWizard's Motion to Stay are DENIED AS MOOT.

I.   **Background**

The instant subpoena dispute stems from a series of ongoing and highly contentious discovery disputes that arose in the underlying action, *Mantha v. QuoteWizard.com, LLC*, a putative class action before the United States District Court for the District of Massachusetts ("the underlying action"). (Doc. No. 1-1, PageID# 4.) In the underlying action, plaintiff Mantha "seeks to represent two

nationwide classes, claiming that QuoteWizard violated the do-not-call ('DNC') and automatic telephone dialing system restrictions of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq*. ('TCPA')." (Doc. No. 1-1, PageID# 5.) QuoteWizard contends that it had consumers' consent to send them the messages at issue. (*Id.*)

Drips is not a party to the underlying action. Drips is an Akron, Ohio-based technology company. (*Id.* at PageID# 6.) Drips operates what it calls an "outreach platform." (*Id.*) This means that other companies pay to use Drips's platform to contact their own customers. (*Id.*) One of Drips's clients was QuoteWizard. (*Id.*) QuoteWizard utilized Drips's platform to send messages to QuoteWizard customers. (*Id.*)

In mid-2020, approximately one year into the underlying action, plaintiff Mantha requested that QuoteWizard produce "all documents evidencing any complaints received by you from anyone, including any government agency, in regards to text messages sent by You or some entity on Your behalf utilizing Drips technology." (Doc. No. 9-1, PageID# 252, Sorokin, J. 3/31/2021 Order.) QuoteWizard objected on relevance and burden grounds. (*Id.*) Mantha also requested that QuoteWizard produce "all consumer requests that future telemarketing calls cease ('Do Not Call') provided to you by anyone in any way relating to text telemarketing conducted on your behalf by Drips." (*Id.*) QuoteWizard also refused this request. (*Id.*) On September 30, 2020, Mantha moved to compel production of these documents by QuoteWizard. (*Id.*) On October 19, 2020, Magistrate Judge M. Page Kelley ordered production of "all documents evidencing any complaints" and of "all Do Not Call requests" in QuoteWizard's custody, control, or possession. (*Id.* at PageID# 253.) Neither party objected to Magistrate Judge Kelley's ruling or sought clarification. (*Id.*)

QuoteWizard supplemented its responses to Mantha's RFP by representing that QuoteWizard had no documents that evidenced any complaints QuoteWizard received from anyone. (*Id.*) Further, instead of producing the Do Not Call requests themselves, as ordered by Magistrate Judge Kelley, QuoteWizard produced a spreadsheet listing 46,000 Do Not Call requests received by Drips, including the date received but redacting consumers' telephone numbers. (*Id.* at PageID# 253-54.)

Once again, Mantha moved to compel production of the Do Not Call requests. (*Id.* at PageID# 254.) QuoteWizard objected, arguing that such a production exceeded the scope of Phase 1 discovery[1], would be unduly burdensome, and concerned documents not within QuoteWizard's possession under the Federal Rules of Civil Procedure. (*Id.*) On January 11, 2021, Magistrate Judge Kelley ruled again that QuoteWizard must produce "all comments by consumers related to the 46,000 Do Not Call requests, whether pertaining to 'complaints' about the texts received or simply 'opt-outs' . . . ." (*Id.*; *see also* Doc. No. 1-1, PageID# 9.)

According to Drips, at this point, QuoteWizard's counsel reached out to Drips with a request that Drips produce the 46,000 records. (Doc. No. 1-1, PageID# 9.) On January 23, 2021, Drips declined to produce the documents to QuoteWizard via written e-mail, reasoning that the burden associated with such a production was too great and no such contractual term between QuoteWizard and Drips contemplated such a production. (*Id.*)

On January 25, 2021, QuoteWizard objected to Magistrate Judge Kelley's order requiring production of the Do Not Call requests, arguing that the requests were not within its possession,

---

[1] According to Drips, "[t]he *Mantha* court bifurcated discovery into two phases, the first covering discovery regarding plaintiff's individual claim and the second covering class discovery. *See Mantha* Order [ECF No. 75] at 5. It is Drips' understanding that discovery has been limited to the plaintiff's individual claims, and that class discovery [has] yet to commence. *See, e.g.,* Mantha Tr. [ECF No. 150-3] at 5:5-6 (plaintiff's counsel stating: '[W]e are proceeding individually as to Mr. Mantha. We haven't gotten to the class side yet.')." (Doc. No. 1-1, PageID# 5.)

3

custody, or control.  (*Id.*)  On February 24, 2021, District Judge Leo Sorokin overruled QuoteWizard's objections and concluded that the documents were indeed within QuoteWizard's custody or control.  (*Id.*; *see also* Doc. No. 1-1, PageID# 10.)

Having been thrice ordered to produce the Do Not Call requests and related consumer comments, on March 1, 2021, QuoteWizard propounded a subpoena on Drips to produce the records so that QuoteWizard could produce them to Mantha.  (*Id.*)  QuoteWizard demanded that Drips produce:

> All comments made by consumers to Drips related to all Do Not Call Requests (as classified by Drips) made by consumers who received telemarking texts from Drips on behalf of QuoteWizard. For further reference, please see the Orders of the U.S. District Court for the District of Massachusetts ordering production of these records in Drips's possession from QuoteWizard, dated January 11, 2021 (ECF No. 132) and February 24, 2021 (ECF No. 144). . . .

(*Id.*)  On March 15, 2021, Drips filed the instant Motion to Quash, arguing that the subpoena is unduly burdensome.  (*Id.*)  Because Drips is headquartered in Akron, Ohio, Drips seeks relief from this Court, as the Northern District of Ohio is "the district where compliance [with the subpoena] is required . . . ."  Fed. R. Civ. P. 45(d)(3).

However, discovery disputes in the underlying action continued to arise.  On March 18, 2021, three days after Drips filed its Motion to Quash, Respondent QuoteWizard appeared in this Court and filed a "Notice of Relevant Order Issued in Underlying Case."  (Doc. No. 8.)  According to QuoteWizard, Judge Sorokin had ordered QuoteWizard to file a copy of a March 16, 2021 Order issued in the underlying action with this Court.  (*Id.* at PageID# 226.)  Judge Sorokin, in his March 16, 2021 Order, denied QuoteWizard's motion for reconsideration of his previous February 24, 2021 ruling in which he ordered QuoteWizard to produce the 46,000 records.  (Doc. No. 8-1, PageID# 230.)  Thus, for a fourth time, the District of Massachusetts ordered QuoteWizard to produce these

records. (*Id.* at PageID# 238.) However, Judge Sorokin also noted that, on March 15, 2021, QuoteWizard alerted the District of Massachusetts that QuoteWizard subpoenaed the records from Drips but that Drips had filed the instant Motion to Quash with this Court. (*Id.* at PageID# 240.) Judge Sorokin observed the following:

> The Court's preliminary review of the filing indicates that Drips is making, inter alia, a burden argument supported by specific evidence. *See, e.g.*, Doc. No. 161-4. QuoteWizard has asserted that the filing by Drips bears on QuoteWizard's Motion for Reconsideration. Doc. No. 161. Burden is, of course, always a relevant consideration in discovery rulings. **But this is the first occasion on which the Court has been presented with evidence of burden.** QuoteWizard has never submitted affidavits or other evidence to the Court to support its conclusory assertions of burden.
>
> During the voluminous proceedings on Mantha's straight forward discovery requests, QuoteWizard has at various points objected, inter alia, that the documents are beyond the scope of Phase 1 discovery, that Mantha's Rule 34 request violated Rule 45, and that production, would be burdensome. These objections were considered and rejected at different stages of adjudication. QuoteWizard also raised objections regarding its relationship with Drips, specifically with regard to whether certain categories of documents possessed by Drips are within its custody or control, an argument the Court today rejects.
>
> **QuoteWizard's notice raises burden in a way that it has failed to raise it to date.** Doc. No. 161-4. The litigation over these discovery requests has proceeded in a piecemeal fashion and has already consumed substantial attorney and judicial resources, including multiple hearings before Magistrate Judge Kelley as well as rulings by her and rulings by the undersigned. **Nonetheless, the Court shall consider these newly articulated burden concerns which, in fairness, Mantha ought to be given the opportunity to brief.** Because these disputes have already substantially delayed this case, Mantha shall respond to QuoteWizard's latest filing, Doc. No. 161, within five business days. In so doing, Mantha's response shall not only address the factual basis for burden but also the applicable legal standard.

(*Id.*, PageID# 240-41, emphasis added.) This kicked off another round of briefing between Mantha and QuoteWizard in the District of Massachusetts, this time focused squarely on whether compelling production of these 46,000 records would impose an undue burden on Drips. On March 23, 2021, Mantha filed his brief, urging the District of Massachusetts to reject QuoteWizard's "convenient and

5

late claims of burden." (Doc. No. 11-2, PageID# 281.) On March 25, 2021, QuoteWizard filed a supplemental brief, urging the District of Massachusetts not to compel production of the records because of the undue burden on Drips. (Doc. No. 11-3, PageID# 288.) On March 26, 2021, Mantha obtained leave to file, and subsequently filed, a surreply. (Doc. No. 11-4.)

Meanwhile in this Court, on March 23, 2021, proposed intervenor Mantha filed a Motion to Intervene and Motion to Transfer Drips's Motion to Quash to the District of Massachusetts. (Doc. No. 9.) According to Mantha, "exceptional circumstances" exist in this matter to merit transferring Drips's Motion to Quash out of its own home district and over to the District of Massachusetts, where the underlying action continues. (*Id.* at PageID# 247.)

On March 29, 2021, Respondent QuoteWizard filed a Motion to Stay Its Response Deadline to Petitioner's Motion to Quash Pending Forthcoming Rulings that will Affect or Govern This Dispute ("Motion to Stay"). (Doc. No. 11.) In its Motion to Stay, QuoteWizard requested that this Court stay QuoteWizard's deadline to respond to Drips's Motion to Quash because QuoteWizard anticipated that Judge Sorokin would soon rule on the exact issue of Drips's alleged undue burden in the underlying action and QuoteWizard wished to avoid inconsistent rulings between the District of Massachusetts and this Court. (*Id.* at PageID# 275-77.) In the alternative, QuoteWizard requested a 10-day extension of its deadline to respond. (*Id.* at PageID# 278.) The Court granted QuoteWizard's Motion to Stay in part to the extent that QuoteWizard sought a 10-day extension but indicated that the Court would await a response from Drips with respect to QuoteWizard's Motion to Stay. (*See* ECF 3/29/2021 Order.)

On April 6, 2021, Drips filed its Brief in Opposition to Mantha's Motion to Intervene and Motion to Transfer. (Doc. No. 14.)  On April 7, 2021, Drips requested, and the Court granted it, leave to file by April 14, 2021, a response to QuoteWizard's Motion to Stay.  (*See* ECF 4/8/2021.)

On April 8, 2021, QuoteWizard filed its Brief in Opposition to Drips's Motion to Quash. (Doc. No. 16.)  QuoteWizard offered no substantive opposition to Drips's Motion to Quash, despite having been ordered four times by the District of Massachusetts to produce the records at issue.  (*Id.*) However, according to QuoteWizard's Opposition, briefing regarding Drips's burden continued in the underlying action *past* Mantha's March 26, 2021 sur-reply.  (*Id.* at PageID# 349.)  In an order dated March 31, 2021, the District of Massachusetts "noted from Mantha's filings that it appeared that Drips had been able to produce similar do not call records, and indeed approximately 226,000 of them, in a putative class action case in the Northern District of California." (*Id.*)  Judge Sorokin observed that Drips's production in the Northern District of California matter appeared to be inconsistent with Drips's current assertion that 46,000 records would be unduly burdensome in the underlying action. (*Id.*)  Accordingly, Judge Sorokin gave QuoteWizard and/or Drips seven days, or until April 7, 2021, to file a supplemental brief explaining "why Drips was able to produce the records in that other case but was arguing that producing similar records herein would be unduly burdensome." (*Id.*)  According to QuoteWizard, Drips declined Judge Sorokin's "invitation" to brief the issue of undue burden in the District of Massachusetts, but QuoteWizard filed a supplemental brief in the District of Massachusetts on April 7, 2021.  (*Id.* at PageID# 350.)

Five days later, on April 13, 2021, QuoteWizard withdrew its April 6, 2021 response to proposed intervenor Mantha's Motion to Intervene and Motion to Transfer.  (Doc. No. 17.) According to QuoteWizard, although it initially consented to Mantha's Motion to Transfer on April

6, 2017, it now withdrew that consent. (*Id.*) QuoteWizard represented to this Court that it was "appealing all aspects of the ongoing discovery dispute in the underlying case" and, as a result, took "no position on the subject motion to intervene and transfer.[ ]" Indeed, *QuoteWizard.com, LLC v. Joseph Mantha* was docketed in the U.S. Court of Appeals for the First Circuit on March 30, 2021. *See* ECF No. 21-1249, 3/30/2021 entry.

Despite having been granted leave to file a response to QuoteWizard's Motion to Stay by April 14, 2021, Drips failed to do so. Further, while Drips's Reply in Support of its Motion to Quash was due on April 15, 2021, Drips filed no such Reply by April 15, 2021. Instead, due to a filing error, Drips inadvertently refiled its April 7, 2021 Motion for Leave on April 15, 2021. (*See* ECF 4/15/2021.) Drips did not correct the error and file its Reply until April 16, 2021, a day late. (Doc. No. 20.) In its Reply, Drips included its response to QuoteWizard's Motion to Stay. (*Id.*) However, despite the Reply and response being untimely, the Court will consider both.

## II. Analysis

Under Rule 45 of the Federal Rules of Civil Procedure, a party may command a nonparty to produce documents. Fed. R. Civ. P. 45(a)(1). Rule 45 permits the Court to quash a subpoena that subjects a nonparty to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv). Courts "have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics*, 275 F.R.D. 251, 253 (S.D. Ohio 2011) (citation omitted). Under that Rule, district courts may take into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Courts must 'balance

the need for discovery against the burden imposed on the person ordered to produce documents,' and the status of that person as a non-party is a factor." *In re: Modern Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (quoting *Am. Elec. Power Co. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)).

Fed. R. Civ. P. 45(f) provides as follows:

**(f) Transferring a Subpoena-Related Motion. When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court** if the person subject to the subpoena consents or **if the court finds exceptional circumstances.** Then, if the attorney for a person subject to a subpoena is authorized to practice in the court where the motion was made, the attorney may file papers and appear on the motion as an officer of the issuing court. To enforce its order, the issuing court may transfer the order to the court where the motion was made.

Fed. R. Civ. P. 45(f) (emphasis added).

In evaluating whether there are "exceptional circumstances" warranting transfer, "[t]he prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions." Advisory Committee Notes, Fed. R. Civ. P. 45 (2013 Amendments). However, in some circumstances, transfer may be warranted "in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." *Id.* Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion. *Id. See also Parker Compound Bows, Inc. v. Hunter's Manufacturing Co., Inc.*, No. 5:15-mc-00064, 2015 WL 7308655, at * 1 (N.D. Ohio Nov. 19, 2015).

In determining whether transfer is appropriate under Fed. R. Civ. P. 45(f), federal courts have considered a number of factors, including "'case complexity, procedural posture, duration of

9

pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation.'" *Parker Compound Bows, Inc.*, 2015 WL 7308655 at * 1 (quoting *Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 34 (D.D.C. 2014)). *See also, e.g., Fed. Home Loan Mortgage Corp. v. Deloitte & Touche LLP*, 309 F.R.D. 41, 44 (D.D.C. 2015). The decision of whether to transfer is discretionary. *See, e.g., Federal Trade Commission v. A+ Financial Center, LLC*, No. 1:13-mc-50, 2013 WL 6388539 at * 2-3 (S.D. Ohio Dec. 6, 2013); *Moon Mountain Farms LLC v. Rural Community Insurance Co.*, 301 F.R.D. 426, 429 (N.D. Cal. 2014).

Upon review, the Court concludes that, in light of the instant exceptional circumstances, transfer of this matter to the District of Massachusetts pursuant to Fed. R. Civ. P. 45(f) is appropriate. *See Parker Compound Bows, Inc.*, 2015 WL 7308655 at * 1 ("In light of the exceptional circumstances at hand, this Court acts *sua sponte*, and transfers the motion to quash back to the Western District of Virginia."); *see also Arclin USA, LLC v. Vits Tech. GmbH*, No. 2:20-mc-48, 2020 WL 6882600, at *1 (S.D. Ohio Nov. 24, 2020).

First, the underlying action has been pending in the District of Massachusetts for approximately 18 months. This particular discovery dispute has stretched on for more than 6 months. While, as a general matter, a Fed. R. Civ. P. 45 subpoena-related motion "will always be resolved by a court less familiar with the underlying litigation," the District of Massachusetts's understanding of the issues implicated in this dispute surpasses mere "familiarity." *Cf. Isola USA Corp. v. Taiwan Union Tech. Corp.*, No. 15-MC-94003-TSH, 2015 WL 5934760, at *3 (D. Mass. June 18, 2015) (declining to transfer subpoena-related motion merely because issuing court had more familiarity, as such a transfer "would eviscerate the protection Rule 45 provides to nonparties"). In the last six months, the District of Massachusetts issued several rulings regarding these exact 46,000 records and

developed a deep and rigorous understanding of the issues implicated in this dispute. (*See* Doc. No. 9-1, PageID# 251.) This weighs in favor of transfer. *See Parker Compound Bows, Inc.*, 2015 WL 7308655 at * 1.

Second, the District of Massachusetts is currently considering the *identical* issue regarding undue burden on Drips. (*See* Doc. Nos. 11-2, 11-3, 11-4, 16-1.) There is a very real possibility that this Court's ruling could conflict with any ruling issued by the District of Massachusetts. The Court rejects Drips's argument that there "is no threat of an inconsistent ruling given that the [District Court of Massachusetts] has not, and cannot, order Drips to do anything." (Doc. No. 14, PageID# 334.) For example, conflicting and inconsistent rulings would result if this Court concluded that QuoteWizard's subpoena was unduly burdensome on Drips, but the District of Massachusetts concluded that Drips would not suffer an undue burden if it was required to produce the 46,000 records in response to QuoteWizard's subpoena. Such an outcome would be a waste of judicial resources and would only serve to prolong an already lengthy and contentious discovery dispute. Judicial economy will be best served by having all of these disputes resolved by the same court.[2] *See Arclin USA, LLC*, 2020 WL 6882600, at *2.

Further, if this Court evaluated Drips's Motion Quash, it would necessarily have to weigh the need for the discovery of these 46,000 records against Drips's alleged undue burden. *In re: Modern Plastics Corp.*, 890 F.3d at 251. QuoteWizard only subpoenaed these records after the District of Massachusetts repeatedly ordered QuoteWizard to produce the records because they were relevant to the underlying dispute and within QuoteWizard's control. (*See* Doc. No. 9-1, PageID# 251-55.)

---

[2] Alternatively, the District of Massachusetts Court could rule that QuoteWizard no longer need produce the 46,000 records due to an undue burden on Drips, rendering QuoteWizard's subpoena moot. Such an outcome would be an inefficient use of this Court's resources, should the District of Massachusetts issue such a ruling while this Court is in the middle of evaluating Drips's Motion.

11

Moreover, whether Drips should produce these 46,000 records is intertwined with the District of Massachusetts's previous evaluation of the relevancy of these records to Mantha's case. (*Id.*) These 46,000 records appear to cut to the heart of Mantha's case under the TCPA against QuoteWizard and whether QuoteWizard contacted consumers without their consent. The Court concludes that the District of Massachusetts is better positioned to assess the appropriate scope of discovery against Drips's alleged undue burden, having already adjudicated the relevancy of these 46,000 records in underlying action. *See Ohio Dep't. of Ins. v. RPM Mortg., Inc.*, No. 2:20-mc-43, 2020 WL 6778212, at *2 (S.D. Ohio Nov. 18, 2020). The Court rejects Drips's argument that its Motion to Quash "involves narrow issues relating primarily to Drips's burden objections." (Doc. No. 14, PageID# 334.) The Court does not evaluate the nonparty's burden in a vacuum. Rather, the Court must balance Drips's alleged undue burden against the need for discovery of the records in the underlying action. *In re: Modern Plastics Corp.*, 890 F.3d at 251. The District of Massachusetts is better positioned to conduct such an evaluation.

      The Court acknowledges that there will some burden imposed on Drips as a result of the transfer. Under the Advisory Committee Notes to Fed. R. Civ. P. 45, the "prime concern should be avoiding burdens on local nonparties subject to subpoenas." Advisory Committee Notes, Fed. R. Civ. P. 45 (2013 Amendments). As the Court observed in *Hausauer*, in the event of a transfer, the nonparty must "find and hire local counsel and pay attorney's fees associated with getting local counsel up to speed on the instant dispute" in a foreign district. *Hausauer v. TrustedSec*, No. 1:20-mc-101, 2020 WL 6826368, at *7 (N.D. Ohio Nov. 20, 2020). And while the COVID-19 pandemic has significantly increased courts' reliance on video-and teleconferencing, there is the possibility that, should this discovery dispute continue to stretch on for another several months, Drips's counsel—

who are located in California, as well as Ohio—may have to travel to Massachusetts, rather than Ohio, for possible hearings on the Motion. *Platinum Props. Inv'r Network, Inc. v. AMCO Ins. Co.*, No. 15-mc-213-JAR-TJJ, 2015 WL 5883819, at *6 (D. Kan. Oct. 8, 2015). Nevertheless, transfer may be warranted if exceptional circumstances exist that "outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." Advisory Committee Notes, Fed. R. Civ. P. 45 (2013 Amendments). The remote possibility that Drips's counsel may have to travel from Los Angeles, California and Columbus, Ohio to Boston, Massachusetts, instead of to Cleveland, Ohio, for a future possible in-person hearing is outweighed by the complex set of exceptional circumstances discussed above. Moreover, the Advisory Committee Notes to Fed. R. Civ. P. 45 encourage judges "to permit telecommunications methods to minimize the burden a transfer imposes on nonparties, if it is necessary for attorneys admitted in the court where the motion is made to appear in the court in which the action is pending," irrespective of COVID-19-related teleconferencing practices. Therefore, the Court does not anticipate that transfer will create practical difficulties for Drips. *Hayward Prop., LLC, v. Commonwealth Land Title Ins. Co.*, No. 20-50286, 2020 WL 3104288, at *2 (E.D. Mich. June 11, 2020). While the Court does not take lightly the transfer of a local nonparty's Motion to an out-of-district court, the exceptional circumstances here outweigh Drips's burden.

The Court is not persuaded by Drips's comparison to *Hausauer*. (*See* Doc. No. 14, PageID# 332-33.) This case is easily distinguishable from the *Hausauer* discovery dispute. First, in *Hausauer*, the Court concluded that the plaintiffs failed to demonstrate a risk of inconsistent rulings where the plaintiffs "intend[ed] to raise a spoliation issue" with the MDL court regarding the defendant's alleged instructions to the nonparty to destroy certain documents. *Hausauer*, 2020 WL 6826368, at

*7. *Hausauer* addressed a "very specific discovery issue," the resolution of which was unlikely to conflict with any ruling from the MDL court. However, as discussed above, this Court's ruling could conflict with the District of Massachusetts's ruling because *both* courts are currently considering the *identical* issue: whether production of the 46,000 records creates an undue burden. Drips does not acknowledge the fact that the District of Massachusetts, which already concluded that these 46,000 records *are in QuoteWizard's control*, has taken up the question of Drips's alleged undue burden. (Doc. No. 11-1, PageID# 273-74.) Moreover, while the *Hausauer* plaintiffs "intend[ed]" to raise the spoliation issue, the issue of undue burden is before both this Court and the District of Massachusetts now. (*Id.*) Thus, while the *Hausauer* plaintiffs' spoliation claims were a theoretical possibility, in this case, two different federal courts are currently spending precious judicial resources considering the identical issue. Finally, *Hausauer* involved a limited dispute over whether the nonparty "substantially complied with the subpoena when it failed to engage in" the plaintiffs' proposed methods for searching the nonparty's electronically stored information. *Id.* This dispute is considerably more complex and, in balancing the need for discovery of the 46,000 records against Drips's interest in nondisclosure, implicates substantive issues at the heart of the underlying action, not a straightforward disagreement over the scope of electronic discovery.

### III. Conclusion

For the foregoing reasons, the exceptional circumstances outweigh any burden transfer may impose on Drips. Under Rule 45(f), the Court TRANSFERS the Motion to Quash to the District of Massachusetts. Because the Court transfers the instant Motion, proposed intervenor Mantha's Motion to Intervene and Motion to Transfer and Respondent QuoteWizard's Motion for Stay are DENIED AS MOOT.

**IT IS SO ORDERED.**

Date: April 16, 2021

                                                s/Pamela A. Barker
                                                PAMELA A. BARKER
                                                U. S. DISTRICT JUDGE